## HALL v. YOUNG.

The court will not, upon the motion of a party, order a witness summoned under a *subpœna duces tecum*, to produce the papers mentioned in the *subpœna*, until it appears, from his own admission or from other conclusive evidence, that he has them under his control; and *it seems* an order will not be made upon him in the alternative to produce them, or show cause why, until he has been asked whether he has them in his possession.

To render the statement made by a witness out of court admissible for the purpose of contradicting his testimony, it must conflict with some fact stated in it, or with its general drift. It is not sufficient that it consists merely in a comment upon the subject which indicates a general want of veracity.

Declarations, made at the time of delivering money to a married woman, by the person delivering it, in the nature of directions or suggestions as to its disposition, are evidence, as part of the *res gestœ*, upon the question whether the money was received by her as her husband's, or her own.

The husband acquires by the marriage no right or title to the personal property owned by the wife at the time of the marriage, or accruing to her subsequently, whether it consist in specific chattels, money, or choses in action, except the marital right of reducing it to possession.

Receiving the money of the wife for the purpose of paying it away on her account, and thus paying it over, does not constitute a reduction to possession.

The husband acquires no interest which can be seized by his creditors, in land purchased in good faith by the wife, and conveyed to a third person for her use, although the husband applies the proceeds of wood and timber, cut by him from the land, in part payment of the consideration for the purchase.

Where the consideration for the purchase of land conveyed to a third person is paid in part with the money of the husband, and in part with that of the wife, not reduced to possession by the husband, the conveyance inures to the use of the husband and wife respectively, in proportion to the amount so paid by them.

Nothing passes by the extent of an execution against the husband upon a parcel of the land so purchased, set off by metes and bounds, from the residue.

WRIT OF ENTRY, for a tract of land in Chester, containing twelve acres. Plea, *nul disseizin*.

The plaintiff, to make out title, relied upon the levy of an execution upon the demanded premises, set off from a tract of about seventy acres, by metes and bounds, in severalty, as the estate of Simon Hazelton. Several exceptions were taken by the defendant to the levy, which, for the purposes of the trial, were overruled by the court, and which are unnecessary to be stated.

For the purpose of showing that said Simon had title to the land at the time of the levy, by virtue of an unrecorded deed, from his son Hezekiah, of the farm of seventy acres, of which the twelve acres were a part, the plaintiff introduced David Currier, who testified that prior to the levy he made out a deed from Hezekiah to Simon of the entire farm, witnessed, and took the acknowledgement of it, and that he thought the deed, at the time it was executed, was delivered into the possession of the grantee.

The farm, of which the twelve acres were a part, had previously been purchased of one Nathan Moore. The bargain for the same was made in October, 1847, when Moore executed and delivered to said Simon a bond to convey the farm to him at a future day, on certain conditions; and in April, 1848, about the time specified in the bond, the conditions being fulfilled to the satisfaction of Moore, he made a conveyance of the farm to Hezekiah, by direction of Simon. After said Currier had testified, said Simon was called by the plaintiff, but not sworn, and the plaintiff moved the court that he be ordered to produce the bond from said Moore, and the deed from said Hezekiah, he having been summoned under a *duces tecum* to bring them into court; and the court declined to make such order. The plaintiff insisting upon his right to require the production of said papers, without swearing said Simon as a witness, and upon the understanding that he was not thereby to be considered as having waived his right, moved that Simon be sworn and inquired of in

respect to his possession of the papers. He was thereupon sworn, and upon inquiry denied that he ever had the deed in his possession, or ever had control of it; and further testified, that he had never seen it since it was executed; and had been informed and believed that it had been destroyed before the commencement of this suit; and that he did not have the bond in his possession at the time of the serving of the *subpœna duces tecum* upon him, nor had he at any time since.

Said Hezekiah was introduced as a witness by the defendant, and testified that he and his father went to Currier's together, for the purpose of having a deed of the premises made out from him to his father; but with the understanding that it was not to be delivered to the father until his wife, the mother of Hezekiah, had been consulted on the subject, and should consent to its being delivered; that the deed was retained by Hezekiah; was never delivered to his father, and was never in his possession, and that upon consulting with his mother he destroyed the deed.

The plaintiff, for the purpose of contradicting Hezekiah, offered to prove by Mary Rand, that subsequent to the time when he testified he destroyed the deed, he stated that he could tell that in three words which would turn the cause either way. He had been inquired of, on cross-examination, whether he had ever so stated, and he denied that he had. This testimony of Mary Rand was objected to, and ruled out.

It was contended by the plaintiff that, even if the deed from Hezekiah to Simon was not delivered, the title was in Simon at the time of the levy, because the purchase money of the land, at the time it was conveyed to Hezekiah, was paid by Simon, and the deed taken by Hezekiah for the use of Simon.

The defendant contended that the purchase money was paid by the wife of Simon out of funds which she held in

her own right, and which had never been reduced to possession by her husband, and that the deed was taken to Hezekiah for the use of the wife.

The wife was introduced as a witness by the defendant, and testified that a portion of the money so paid for the purchase of the land was given to her by her brother, and that, upon his giving it to her, he said: "Take this, and buy a place for yourself, and don't let Simon have it."

To this evidence the plaintiff objected, and it was admitted by the court.

There was evidence tending to show that Simon received this money from his wife for the purpose of paying it over towards the purchase of the land, and that he carried the money and delivered it in part payment for the land.

The court instructed the jury that such taking and paying over the money by the husband did not constitute a reducing to possession, so as to make it the money of the husband, unless they found he had the intention to claim it as his own.

It appeared in evidence that a portion of the purchase money of the land was secured by the promissory notes of Hezekiah, and a mortgage back of the premises, and that these notes were subsequently paid in part with money arising from the sale of wood and timber cut by Simon from the premises, and in part with money arising from other sources; and there was conflicting evidence whether the other money belonged to the wife in her own right, which the husband had not reduced to possession, or whether it was the money of the husband. The court instructed the jury that if the money paid for the purchase of the land arising from other sources than the sale of the wood and timber, was the money of the wife in her own right, independent of the husband, and had never been reduced to possession by him, the husband would have no such interest in the land by reason of his cutting off and disposing of the wood and timber, and applying the pro-

ceeds in part payment for the land, as to give the creditor of Simon any right in the land under the levy; and that if a portion of the money arising from such other sources was the money of the husband, and the residue the money of the wife, not reduced to possession by the husband, the deed taken to Hezekiah would inure to the benefit of the husband and wife respectively, in proportion to the several amounts paid by them towards the purchase, and in that case nothing passed by the levy.

The jury returned a verdict for the defendant, and the plaintiff, having excepted to the foregoing rulings, refusals and instructions of the court, moves that the same be set aside.

*J. S. Wells*, for the plaintiff.

1. A witness summoned to produce a paper will be compelled to do so without being sworn. 1 Stark. Ev. 161, note n; 1 Phil. Ev. 273–4, 2d Ed. ; 3 ditto 1171; Roscoe's Crim. Ev. 117, 128, 169; *Perry* v. *Gibson*, 1 Ad. & El. 48, (28 Eng. Com. L. 32;) *Davis* v. *Dole*, 4 Car. & Payne 335, (19 Com. L. 410;) *Wood* v. *Connell*, 2 Whart. 542, 562.

2. The plaintiff's evidence tended to show that the bargain for the land was made by Simon; that a bond was given for a conveyance to him; that the conveyance was made to Hezekiah by his direction, and that he (Hezekiah) conveyed to his father on the same day that they received the title, and that the title so remained with the knowledge of the mother. If the jury had found this to be the state of the facts, it must have been decisive of the case. Hezekiah met the evidence by an absolute denial. Ought not his declarations upon this subject to have been received? If he had said to Mrs. Rand: "Hall should recover," and stated his reasons; or, "father has the deed"; or, "mother has no claim, as father paid for the land," or words to that effect, and then denied it on trial, can there be any doubt the contradiction should have been

Hall *v.* Young.

admitted? He was bound by his oath to testify the whole truth. If he knew what would give the cause to the plaintiff, or defeat his mother's claim, he was bound to state it. He stated to Mrs. Rand that he had that knowledge, and on cross-examination denied that he so stated. If he did so state, it would clearly detract from his evidence in relation to the deed; and having that bearing the testimony of Mrs. Rand should have been admitted.

3. The declarations of the defendant, the brother of Mrs. Hazelton, were allowed to be proved, as tending to show that the farm was purchased by her. Suppose her brother did give her money, the character of that act was not in question, and the declarations accompanying the gift are only admissible as *res gestæ*, when the character of the act is in question. The question here was, who purchased the farm? and, upon that subject, the declarations of the defendant were admitted to characterize that transaction instead of the alleged gift. 1 Greenl. Ev. 120.

4. The case finds that Simon bargained for the farm, took a bond for a deed, had the conveyance made to his son, paid over to the grantor the money for the land, part of which was from sale of wood and timber cut by Simon from the land, and part from other sources. The question of reducing to possession by the husband had no pertinency here; for if the defendant gave money to the wife of Hazelton, during coverture, it at once became the absolute property of the husband. Com. Dig. Bar. & Feme, E, 3; Bac. Ab.; Bar. & Feme, D, C, 3; Reeves Dom. Rel. 60, 63; *Schuyler* v. *Hoyle*, 5 Johns. Ch. 203. But if it were otherwise, the charge should have been in favor of the plaintiff, because Simon Hazelton had possession of the money. He carried and delivered it in part payment of the land. He did not profess to act for the wife, but had the conveyance made to the son. He might have received the money from his wife, intending to invest it for her, and afterward have changed his mind,

and taken conveyance to himself or a trustee. That would be assuming control over the fund, and make it as clearly his as any other mode of reducing it to possession.

5. The defendant, being a stranger, and interested, has no right to raise the question as to tenancy in common between Hazelton and wife, nor can any one during the life of Simon do so. The levy was upon twelve of the seventy acres which constituted the farm. The court charged that when any portion of the purchase money belonged to the wife, it would constitute her a tenant in common, and defeat the levy. We think such a transaction should defeat any claim of the wife. She should not be permitted, by thus combining with an insolvent husband, to defeat a levy, when but a fraction of the consideration came from her. Commingling her funds in this manner with the husband's should be held to be a surrender of the property to the husband.

*Marston,* for the defendant.

1. The court had no authority to order Simon Hazelton to produce the bond or deed. *Non constat,* that he had any such document to produce. The plaintiff did not choose to ask him, or to have him sworn as a witness. The court, therefore, had no more authority over him than any other citizen who was not a witness in the cause; and if he had been sworn and admitted he had them, no power could have compelled him to surrender or produce them on the demand of this plaintiff.

2. Whether Hezekiah Hazelton did or did not say he could tell that in three words which would turn the cause either way, was immaterial. It was entirely in the discretion of the court to admit or exclude the proposed testimony of Mary Rand to that point.

3. The testimony of the wife of Simon as to what her brother told her to do with the money he gave her, was admissible as a part of the *res gestæ.* It elucidated the act.

Hall *v.* Young.

It explained the purpose of the gift, and constituted the very fact which was the subject matter of inquiry. 1 Greenl. Ev. sec. 108. 1 Stark. Ev. 46 ; *Sessions* v. *Little,* 9 N. H. 271 ; *Johnson* v. *Elliot,* 26 N. H. (6 Foster) 67.

4. The separate property of the wife in whatever form it may exist is not liable to be taken in payment of the husband's debts, until he has appropriated it to his own use, or in some way exercised dominion over it. The course of legislation in this State and a series of judicial decisions have firmly established the general proposition. And the husband may as well act as the trustee or agent of the wife in investing or disposing of his wife's property as another, and if he do so without intending to exercise his marital right, no interest vests in him. *Coffin* v. *Morrill,* 22 N. H. (2 Foster) 352, and cases cited.

5. The property of the wife and the property of the husband may be inserted in the same land chattel or chose in action, and if held by a third party for their use, the husband does not, thereby, against his will, become possessed of his wife's estate. The husband's interest may be taken in the same way by his creditors that it might have been if invested with property of another not his wife. His undivided interest in land may be set off, but not the land itself, by metes and bounds.

SAWYER, J. It is unnecessary to consider the exceptions taken by the defendant to the levy, if, upon the other questions raised by the case, the verdict can be sustained. The plaintiff claims under the levy, and the exceptions to its sufficiency were overruled for the purposes of the trial. The object and effect of this ruling were to leave the par_ties at liberty to try other controverted questions upon which the plaintiff's title under the levy depended. Upon these other questions the defendant prevailed ; and if the trial was properly conducted as to them, it is immaterial whether the return of the extent is sufficient or otherwise.

If Simon Hazelton, upon being sworn as a witness, had admitted that he had in his possession or under his control the deed from Hezekiah to himself, or the bond which he had taken in the first instance for a deed; or it had otherwise appeared to the court that such was the fact, upon evidence which could leave no room for doubt, he might have been compelled to produce it. There is no distinction in principle between compelling a witness to produce a document in his possession under a *subpœna duces tecum*, and compelling him to testify to facts within his knowledge. *Amy* v. *Long*, 9 East 473; *Bull* v. *Loveland*, 10 Pick. 14. But before the court is to be called upon to make a peremptory order that the document be produced, it must be shown conclusively that the witness has the power to comply with it. It is not sufficient that there is such evidence as would be competent to be submitted to a jury upon the question. Evidence may have a legal tendency to establish the fact that the witness has the document in his possession, and yet fall far short of that conclusive character which will warrant the court in adjudging him guilty of contempt in not complying with the order to produce it. If the state of the case was not such as to justify proceedings against him for contempt, in refusing obedience to the order, the court properly declined to make it. The testimony of David Currier showed only that he understood the deed had been delivered to Simon Hazelton, and the case finds that a bond was delivered to him by Moore, in October, 1847, conditioned to execute a conveyance at a subsequent time, and a conveyance about the time specified in the bond to Hezekiah by direction of Simon. If the order had been made for the production of these papers, it could not have been enforced without further inquiry. The court properly declined to make it until, upon such inquiry, it was made clearly to appear that the party upon whom it was made had the power to comply with it. The motion must be

understood from the case to have been for a peremptory
order.   But if it had been for an order in the alternative,
to produce the paper or show cause to the contrary, we
are not aware of any authority for proceeding in that
mode upon the mere motion of a party who has caused
the witness to be summoned under a *subpœna duces tecum*,
but declines to subject him to examination as a witness
under oath in relation to his possession or knowledge of
the papers.   There is no just ground for holding him to
such an order merely because there may be evidence, from
other sources, tending to show that at some previous time
he had the papers in possession.   If the defendant had
made him a witness, and subjected him to inquiry in rela-
tion to his possession of them, upon a case being pre-
sented from his answers, the court might have issued the
order in the alternative or peremptory form, as the cir-
cumstances of the case required.

The testimony of Mary Rand, offered by the defendant
to contradict Hezekiah Hazelton, had no tendency to con-
tradict him.   His statement to the witness, that he could
tell that in three words which would turn the cause either
way, had no such connection with his testimony as to con-
flict with any statement contained in it.   The most that
can be understood from it is that it is a statement that he
was a witness of such weight and importance that his tes-
timony, true or false, would decide the result.   Such a
remark made by the witness might have some tendency
to show to the jury the true character of the man, and
enable them to place a just estimate upon his credibility.
This being the only effect of the evidence, it is incompe-
tent.   To render it competent it must be inconsistent with,
or contradictory to, his statements upon the stand.   The
statement cannot be understood as varying or conflicting
with the facts testified to by him, that the understanding
between him and his father was that the deed was not to
be delivered until the assent of the mother had been

given; that it was never delivered or that it was destroyed by him. If there is ground for the conjecture that, in making the remark, his meaning was that the truth would warrant him to state the facts contrary to what he has stated them, and thus turn the cause in favor of one party, there is equal ground for conjecturing that he meant to say he might truly state them as he has, and thus turn it in favor of the other. If he is to be understood as saying that, by inventing or suppressing facts, to be stated in few words, he could turn the cause one way, and by testifying to the truth in few words, the other way, there is nothing in the remark to indicate what would be invention or suppression of fact, and his testimony may still be all true.

The testimony of the wife of Simon Hazelton, as to the declaration made by her brother, was admissible as part of the *res gestæ.* The act of giving the money to her by her brother was material to the issue, one of the inquiries in the case being whether it was her money, held in her own right, or her husband's. The declaration made at the time, in relation to it, qualified and gave character to the act; and in reference to the matter which was the essence of the inquiry, namely, whose was the money? It was therefore properly admitted.

The most important questions presented by the case arise upon the instructions to the jury, involving, to some extent, a consideration of the relative rights of husband and wife to property acquired in her right. A series of judicial decisions, sustained by the general course of legislation in this State, have materially modified the ancient rules of the common law upon this subject. By the policy of the old law, personal chattels in possession, which belonged to the wife at the time of the marriage, or which fell to her afterward, became instantly the absolute property of the husband; Co. Lit. 351; 2 Kent's Com. 143; while her choses in action became his only by his asserting title to them, and reducing them to possession.

Hall *v.* Young.

In this State, the right of the husband in both cases is regarded as a marital right, to be enforced by him or waived at his pleasure. If waived, the property, whether it consist of personal chattels, money, or choses in action, remains the property of the wife. Thus in *Parsons* v. *Parsons & al.*, 9 N. H. 309, it was held that the distributive share of the wife, in the estate of a person deceased, as heir-at-law, does not vest absolutely in the husband, but is to be classed with her choses in action; and so of a legacy to her; *Marston* v. *Carter & Tr.*, 12 N. H. 159; and a creditor of the husband cannot insist upon the right being enforced. *Wheeler* v. *Moore & Tr.*, 13 N. H. 478. In *Coffin* v. *Morrill*, 22 N. H. (2 Foster) 352, it is said that while these decisions have been made by the courts, the legislation of the State in the enactment of 1846, chap. 327; Laws, June session, 1846, p. 308; giving to the wife the right to hold and dispose of property in the cases specified, independent of the control of her husband, and authorizing suits by and against her in her own name in respect to such property, must be regarded as giving the sanction of the legislature to those decisions, and thus justifying the extension of the same general view to other cases, not embraced in the terms of those decisions, but falling within the like reason. It was accordingly decided in that case that, although land purchased with the proceeds of a legacy to the wife, not claimed or reduced to possession by the husband, and of which the conveyance was taken to her, might be subject to the claims of his creditors to the extent of his life estate therein, if they had levied upon it in his life time; yet, upon a sale of it without such levy, the husband joining in the conveyance, the proceeds of the sale, without the assertion by the husband of his right to reduce them to possession, remained the wife's; and those proceeds being invested in the purchase of other lands, of which the conveyance was taken to the wife, she had good title to such other lands as

against the creditors of her husband claiming through his administrator.

In *Cutter* v. *Butler*, 25 N. H. (5 Foster) 343, it is asserted in broad and unqualified terms, that personal chattels, in possession of the wife at the time of the marriage, or falling to her afterward, are not absolutely the husband's, but, like her choses in action, subject to his marital right of reducing them to possession, if he so elect, and thus making them his. It is there said that the old policy of the law, making the distinction in this respect between choses in action and chattels in possession, is unjust and absurd.

The principles recognized in these cases lead directly to the general doctrine that the personal property of the wife at the time of the marriage, or accruing to her in her own right, subsequently, whether it consists in specific chattels, money, or choses in action, and however it may fall to her, whether by legacy, gift, *inter vivos* or *causa mortis*, as her distributive share in the estate of a person deceased, or otherwise, if it accrues independently of her husband, and not upon any consideration moving from or connected with him, it remains her's until he exercises his marital right by reducing it to possession. This is now to be understood as the settled law of this State.

Whether the husband has thus reduced the property to possession cannot be made to depend upon any technical rule, or the concurrence of any particular facts, except that the intention must exist and be carried into execution. In *Coffin* v. *Morrill* it is said, "the joining of the husband in such acts of the wife as are necessary for the investment, transfer or use of the property, and which cannot be done by the wife alone, and acts done by the husband alone, merely and avowedly as the servant of the wife, will not operate as a claim upon the property by the husband, or a reduction of it to his possession. The whole

matter should rest, independently of technical rules, upon the intention of the parties.

The instructions to the jury relative to the money given to the wife, by her brother, and the delivery of it by Simon Hazelton, in part payment for the land, upon the view suggested, were correct.

The instructions in reference to the wood cut from the land and disposed of by Simon Hazelton, were also correct. The case in this respect is not to be distinguished from that of *Coffin* v. *Morrill*, in one of the points there decided. The mere cutting off and selling of the wood, and applying the proceeds to the payment of the note given in part for the purchase money, cannot, of itself, be held as a reducing to possession of the money so obtained, or as giving to Simon Hazelton any right or interest in the land. The application of the money arising from the sale of the wood to the payment of the debt secured by mortgage upon the land, is a proceeding of the same character as that in *Coffin* v. *Morrill;* of applying the money received as damages for flowing the land, or for taking a portion of it for a highway, to the payment of a mortgage debt upon it. Without proof sufficient to satisfy the jury that the intention existed in the mind of the husband to claim the money as his own, and in the absence of any evidence that the arrangement was made in this mode for the purpose of defrauding creditors, it must be understood that he was acting merely as the agent of the wife.

The last point in the instructions proceeds upon the ground that, upon the evidence in the case, the jury might find that a portion of the purchase money for the land was the money of the husband, and the residue that of the wife in her own right, which the husband had not reduced to possession; and that the deed was taken to Hezekiah with the intent on the part of the husband that it should inure to the benefit of the husband and wife, in proportion to the shares paid by them respectively towards

the purchase. Upon the state of facts thus assumed in the instructions, a trust resulted to each, *pro tanto*. In *Tebbets* v. *Tilton*, 21 N. H. (1 Foster) 273, it was decided that if a husband take a deed in the name of his wife, paying a part of the purchase money, a trust results in his favor, in proportion to the share of the purchase money so paid. The doctrine applies as well to a joint as an individual purchase. 4 Kent's Com. 301; *Powell* v. *Manson*, 3 Mason 364; *Wray* v. *Steele*, 2 Veasey & Beames 389. The trust arises upon the mere ownership of the money. *Pembroke* v. *Allenstown*, 21 N. H. (1 Foster) 107 ; *Tebbets* v. *Tilton*, *sup*. From this it follows as a necessary consequence that where land is purchased in part with the money of the husband, and in part with the separate money of the wife, and the conveyance is taken to a third person, a trust results to each in proportion to the respective shares so paid. It was said by Lord *Hardwicke*, 9 Mod. 235, that where several persons agreed to purchase an estate in the name of one, and the purchase money appeared by the deed to be paid by him alone, no trust resulted, for this would introduce all the mischiefs which the statute of frauds was intended to prevent. This doctrine would seem to be sustained to some extent by later decisions in England, and in New-York and Virginia. *Wray* v. *Steele*, *sup.* ; *Bottsford* v. *Burr*, 2 Johns. Ch. 405; *Sayre* v. *Townsend*, 15 Wend. 647 ; *White* v. *Carpenter*, 2 Paige 217, 241; *Hayes* v. *Wood*, 4 Randolph 272. But these cases carry the doctrine on to the extent that no trust arises where there are several persons as purchasers ; and the proportion of the purchase money to be paid by each is indefinite, and not where the agreed value of a definite proportion of the whole estate is to be paid by each. The doctrine, even to that extent, is the result of the extreme caution with which, in some jurisdictions, courts receive parol testimony to establish the facts from which a trust may legally result. In this State the question of the ownership

of the money, at least from the time of *Scoby* v. *Blanchard,* 3 N. H. 170, has always been held to be one open to parol proof, like all other questions of fact to be determined upon such evidence. *Prichard* v. *Brown,* 4 N. H. 397; *Page* v. *Page,* 8 N. H. 187; *Brooks* v. *Fowle,* 14 N. H. 248; *Graves* v. *Graves,* 29 N. H. (9 Foster) 142.

Upon the facts assumed in this part of the instructions, the husband was *cestui que trust* of an undivided portion of the entire farm, the extent of his undivided interest or share being determined by the proportionate amount of the purchase money paid by him. As such, it could be set off upon execution against him by an extent upon the whole or any particular proportion of that undivided interest, but not by carving out of the estate a certain tract by metes and bounds, constituting a distinct parcel of the premises in severalty. If the proceedings in thus levying the execution are sustained, the wife, and the defendant claiming under her, is necessarily excluded from the undivided interest in the parcel so carved out, without partition, in the same manner as on proceedings for partition before the levy. All the exceptions being overruled, there must be

*Judgment on the verdict.*