HENRY B. ATHERTON, ADMINISTRATOR OF SARAH J. McQUESTEN
v. GEORGE McQUESTEN.

Where bank stock was transferred to the wife on the fifth day of July 1860, it was held that the husband's marital right to reduce it to possession was not affected by the act of July 4, 1860, as that act did not take effect until August first of that year; and therefore that the husband's interest in the stock was to be determined by the rules of the common law.

Where, in such case, the husband survived the wife, and afterwards died without having reduced the stock into possession, it was *held* that the administrator of the wife, who owed no debts, could not maintain an action for this stock against the husband's representative.

*Held* also, that, on the death of the wife, the husband was entitled absolutely to the stock, subject only to her debts, and that on his subsequent death this interest vested in his representative.

TROVER, for ten shares in the capital stock of the Indian Head Bank alleged to have been converted by the defendant on the 20th of December, 1864, after the death of the intestate.

On trial by the court it appeared that Sarah J. McQuesten was the wife of Samuel McQuesten, and died on the 5th of July, 1864, and that Samuel McQuesten died on the 20th of the same month; that Samuel McQuesten and the defendant who was his brother, on the 5th of July, 1860, were the joint owners of 20 shares in the stock of the Indian Head Bank, and then joined in the conveyance of ten of the shares to Samuel McQuesten, and of the other ten to the intestate, Sarah J. McQuesten, the wife of Samuel; that Samuel McQuesten took the dividend on the shares conveyed to his wife during his and her life, except that the dividend for July, 1862, was taken by his wife, and also 20 per cent. on the capital, which was repaid to the stockholders on a reduction of the capital; that Samuel McQuesten received one dividend on the shares of his wife on the day when she died and after her death; that the defendant was duly appointed administrator on the estate of Samuel McQuesten, at the next probate court after his death; that he claimed these shares as administrator and in that capacity transferred them to his own name before the commencement of this suit; that there were no debts due from Sarah J. McQuesten at the time of her death, and that Samuel McQuesten was solvent.

It is agreed by the parties, that, after the opinion of the court shall be delivered in this case, it shall be discharged and the action stand for trial, if either party shall desire it, otherwise judgment to be rendered according to the opinion of the court thereon.

*B. F. Emerson,* for defendant.

July 5th, 1860, ten shares of stock were transferred to Sarah J. McQuesten, by the procurement of her husband without any consideration paid by her. At that time the only statute provisions in this State relating to property held by married women were sec. 3, chap. 158, Comp. Statutes, 380, and the act of 1846.

These shares were not held by her, for her sole and separate use, under the 1st and 2d sections of chap. 158, or the act of 1846, and consequently could not, when transferred, be affected by the provisions of sec. 3 of that chapter; so that at that time the rights of the husband and wife "must stand on the grounds of the common law."

*Parsons* v. *Parsons,* 9 N. H. 321. At common law he could reduce to possession, release or assign such property without her consent. She could do neither without his consent.

*Parsons* v. *Parsons; Savage* v. *King,* 5 Shep. 301. The husband had a vested interest in this property immediately after it was transferred to his wife.

*Albee* v. *Carpenter,* 12 Cush. 382; *Judge of Probate* v. *Chamberlain,* 3 N. H. 129. He had no stronger title to any property not actually in his possession. If he choose not to collect a note in six years, to enforce his right to land in possession of another for twenty years, or to reduce his wife's property to possession in his life, they are all alike lost to him and his heirs. They depend equally on his will. Her interest during his life was the most precarious possible. Her right

is no more than it is where he has made a will in her favor. In both cases, if he chooses, it remains so that she takes if she survives him. We contend that the right to sell, release, or assign property, or to take and use it, is characteristic of a vested right to it; when that right exists there must be a vested interest. If the husband survived his wife he was entitled to administer, and recover and receive her personal property to his own use subject to her debts. *Parsons* v. *Parsons*, 2 Kent 135; *Judge of Probate* v. *Chamberlain*. If he obtained possession of his deceased wife's property, without taking letters he could hold it against his wife's next of kin. *Whittaker* v. *Whittaker*, 6 Johns. 112; *Vanderveir* v. *Alston,* 16 Ala. 494, 13 U. S. Digest, 383, sec. 32; *McKee* v. *McKee*, 8 B. Monroe, 461, 9 U. S. Digest, 264, sec. 13. He may sue in his own right for a legacy to his wife after her death. *Goddard* v. *Johnson*, 14 Pick. 332. He is entitled to his deceased wife's property let who will administer. *Ryan* v. *Rooks*, 25 Geor. 622, 20 U. S. Digest, 489, sec. 32. *Haskins* v. *Miller*, 2 Dev. 360, 5 U. S. Digest, 121, sec. 86. He may sue in his own name, on a note to his deceased wife, for money lent by her, and take it to his own use. 4 Dana, 260, *Jones* v. *Warren*, 5 U. S. Digest, 122, sec. 112. We submit upon these authorities that her personal property, on her death became his, free from all claims of everybody, except her creditors.

If he dies after her, without having reduced it to possession, it goes to his representatives, and his administrator can hold against everybody, if he gets possession of it, precisely as the husband could have done. *Whittaker* v. *Whittaker; Lockwood* v. *Stackholm*, 11 Paige 87, 8 U. S. Digest, 212, sec. 5; *Lee* v. *Wheeler*, 5 Geo. 541, 9 U. S. Digest, 261, sec. 8; *Morrow* v. *Whitesides*, 10 B. Monroe, 411, 11 U. S. Digest, 254, sec. 16; *Colman* v. *Hallowell*, 1 Jones, Eq. 204, 15 U. S. Digest, 312, sec. 22; *Drew* v. *Long*, 21 English Law and Eq. 339, 14 U. S. Digest, 343, sec. 41; *Trow* v. *Cooper*, 4 Sneed 296, 18 U. S. Digest, 388, sec. 57; *Albee* v. *Carpenter; Ryan* v. *Rooks; Dwelle* v. *Roath*, 39 Geo. 733, 20 U. S. Digest, 489, sec. 53; 2 Kent 136; 9 Dane 58, sec. 7; *Judge of Probate* v. *Chamberlain.*

July 5, 1860, the act of 1860 was not in force, and could not change the rights of the parties to this property, without operating retrospectively, and that it could not do. *Insurance Co.* v. *Warren*, Belknap, Dec. Term, 1864, and cases therein cited.

But if it could have a retrospective operation, it did not affect these shares, as they were voluntarily transferred to the wife, by the husband, without any consideration from her, and come within the proviso of the act.

The parties in interest have all agreed in adjusting all property of the wife. She owed no debts; there was nothing to be administered upon. The plaintiff was appointed on application of those having no interest, without notice to or the knowledge of the parties in interest, and is not rightfully administrator. If he recovers in this case, it will be for the

benefit of the heirs of the husband, and they will be compelled to pay the costs when they are in effect the prevailing party.

*George Y. Sawyer*, for plaintiff.

I. We contend that it is immaterial whether the transfer of the 10 shares to Sarah J. was upon a consideration paid by her out of her own funds or as a voluntary assignment by her husband.

If voluntary, or upon a consideration paid by him, it was an advancement or provision made for her to her own use. *Dickinson* v. *Davis*, 43 N. H. 647. This was on the 5th of July, 1860, the next day after the passage of the act of 1860, declaring that every married woman shall hold to her own use all property inherited, &c., acts of 1860, ch. 2342, page 2248. The act took effect Aug. 1, 1860, and by its operation the husband was barred from exercising any marital right which he might otherwise have had to reduce the shares to possession after Aug. 1. Prior to this he had no vested interest or right in his wife's choses in action, until he *had* actually exercised the right by reducing them to possession. Until then, he had a mere power, a naked marital right, if he chose to exercise it, to make them his. If not exercised it was waived and so long as waived the property remained the wife's. *Parsons* v. *Parsons & al.*, 9 N. H. 309; *Marston* v. *Carter & Tr.*, 12 N. H. 159; *Wheeler* v. *Moore & Tr.*, 13 N. H. 478; *Coffin* v. *Morrill*, 22 N. H, 352; *Cutter* v. *Butler*, 25 N. H. 343; *Hall* v. *Young*, 37 N. H. 134; *Jordan* v. *Cummings*, 43 N. H. 134.

The act, then, in no way impairs any vested right of the husband, because no right had vested in him. Until a reduction to possession the right of the husband is but a qualified and conditional one depending on his election. Such is not a vested right, which must be one settled, fixed and determined, not depending on any contingency. *Clark* v. *Clark*, 10 N. H. 380; *Loveren* v. *Lamprey*, 22 N. H. 434; *Willard* v. *Harvey & al.*, 24 N. H. 344; *Lakeman* v. *Moor*, 32 N. H. 410.

In Mississippi, under what is there termed "the woman's law," substantially such as our act of 1860, it was held in *Clark* v. *McCreary*, 12 Smeades & Marshall, 347, that, by giving to the law a retrospective operation, no vested right of the husband was impaired, because his right to reduce to possession was thus conditional and qualified. So, in Georgia, it is held that the husband has no vested interest in his wife's choses in action until reduced to possession. *Sayre* v. *Flourney*, 3 Kelley 541.

The whole policy of the law in this State, as indicated by legislation and the current of judicial decisions, is against the doctrine that the property of the wife becomes, in contemplation of law, the husband's, or that he has any right or interest in it in any case, except on the ground that he has actually exercised the power of reducing it to possession and thereby acquired an interest in it.

The rule which obtains in England and some jurisdictions in this country, that, upon the death of the husband—who has survived the

wife,—without reducing her choses in action to possession, his adminis-
trator is entitled to claim them, has never been recognized here. It is
in conflict with the entire policy of the law on that subject in this State.

Here the law leaves the property to the wife until divested by the ex-
ercise of the marital right. That right can be exercised by no one else
for him. In *Wheeler* v. *Moore & Tr.*, 13 N. H. 478, it is said by
Parker, C. J., "if the husband refuse or neglect to reduce the wife's
property to possession or assert a claim to it, it is clear, that, after his
death, neither his heirs nor his creditors could assert any title to it. Nor
could his administrator in their behalf." And the learned Ch. J. quotes
with approbation the language of Ch. J. Marshall in *Gallego* v. *Gal-
lego's Ex.*, 2 Brock. 287, that "if the husband dies leaving the wife
before reducing to possession, his power is not transmissible to his rep-
resentatives but dies with him." If the husband dies subsequently to
the wife, before reducing to possession, upon what principle recognized
in the law of this State can it be held, that the right is transmitted to
his representatives or survivors to them? If not exercised by him be-
fore his death, it can never be exercised, and the property remains in the
wife and her representatives as at her death, and is to be administered
as hers for the benefit of her heirs.

By sec. 3, ch. 149, Rev. Stat., the husband is excluded from any
share at her death as one of her heirs.

II. If, however, the husband had the right, the shares were never re-
duced to possession by him.

As to what is a reduction to possession, see *Estate of Miller*, 1
Ashmead 323.

To reduce to possession the husband must have received the money
on the chose in action, or sold it, or recovered judgment in his own
name upon it, or otherwise evinced his intention to make it his. A pledge
of it by him as collateral security is not sufficient to reduce to posses-
sion. *Latourette* v. *Williams*, 1 Barb. (N. Y.) 9.

A suit by the husband for the recovery of the wife's property does
not show conclusively a reduction to possession, for it may be that he
prosecuted the suit for her sole benefit. The controlling question is,
was it or not the intent of the husband to make it his? *Pierson* v.
*Smith*, 9 Ohio (N. S.) 554. Retaining possession as trustee is not
reducing to possession. *Walden* v. *Chambers*, 7 Ohio (N. S.) 30.

Reduction to possession must be by some such act as recovering judg-
ment in the sole name of the husband, taking note or obligation in his
own name, assigning absolutely for valuable consideration, executing a
release and the like. *Needles* v. *Needles*, 7 Ohio (N. S.) 432.

Keeping the wife's notes in his possession and among his papers is not
reducing to possession. *Holmes* v. *Holmes*, 28 Vt. 765. Receiving
the property of the wife is not reducing to possession, unless it is re-
ceived by the husband solely in the exercise of his marital right and for
the purpose of appropriating to his use. *Barron* v. *Barron*, 24 Vt.
375.

As to what constitutes a reduction to possession the whole matter

should, independently of technical rules, rest in the intention of the parties. *Coffin* v. *Morrill*, 22 N. H. 352.

Receipt by husband of dividends accruing from shares in a corporation standing in the wife's name, is evidence of a reduction to possession of the dividends but not of the stock. *Burr* v. *Sherwood*, 3 Bradf. (N. Y.) 85.

There is nothing in this case to indicate any intent on the part of the husband to make the shares his. On the contrary, though the receiving of the dividends by him unexplained, may be evidence of his intention to make the dividends so received his, yet his allowing the shares to remain in her name and permitting her occasionally to take the dividends, and especially his allowing her to receive the amount of the capital reduced, belonging to her shares, negatives any such intent in reference to the shares themselves.

BELLOWS, J. Assuming that the transfer by Samuel McQuesten and George McQuesten to the wife of Samuel McQuesten, of the stock in controversy, was valid, the question is, whether upon her death her husband had any interest in the stock, or whether it went to her heirs. The transfer, it seems, was July 5, 1860, and the right of the husband in respect to the stock was not affected by any statute of this State then in force. The law of July 4, 1860, Pamphlet Laws, ch. 2342, was to take effect on the first day of August of that year; and it provides that every married woman shall hold to her own use, free from the interference or control of her husband, all property inherited by, bequeathed, given, or conveyed to her, if not occasioned by payment or pledge of the property of the husband.

It is urged by the plaintiff's counsel that this law took effect upon this stock upon the ground that the husband acquired no vested interest by the transfer.

To determine this question it becomes necessary to consider what interest the husband had, at common law, in the choses in action of his wife. At common law marriage was regarded as an absolute gift to the husband of the personal chattels of the wife in possession, but her choses in action did not vest absolutely in him, though he had the marital right to make them his by reducing them into possession. If he did not choose to do so, they remained the property of the wife, and the husband had no interest that could be reached by his creditors. *Marston* v. *Carter*, 12 N. H. 159; *Wheeler* v. *Moore & Tr.*, 13 N. H. 478; *Coffin* v. *Morrill*, 22 N. H. 359; and on the death of the husband, living the wife, they survived to her.

If, on the other hand, the husband survived the wife he became entitled absolutely to her choses in action, although not reduced to possession, and was also entitled to administration on her estate, and to recover such choses in action to his own use, subject only to the payment of her debts. If administration was taken by another and such choses in action recovered by him, he would hold them, after payment of the wife's debts, in trust for the husband or his representatives. *Squib* v. *Wyn*, 1 P. Wms. 381; *Elliott* v. *Collier*, 3 Atk. 526; *Whittaker*

v. *Whittaker*, 6 Johns. 117; and it is clearly settled by these and numerous other authorities, that, to entitle the husband to the beneficial use of such choses in action, it is not necessary t¹ at he take administration. Such is the doctrine of *Weeks* v. *Jewett & al.*, 45 N. H. 540. If the husband dies before he administers, the right to administer and to the property goes to his heirs. *Judge of Probate* v. *Chamberlain*, 3 N. H. 129; *Weeks* v. *Jewett & al.*, before cited.

It appears, then, that the interest of the husband in his wife's choses in action is not absolute, so as to vest the title in him at once, and subject the property to survivors for his debts; but it is a qualified interest, depending upon his election to reduce them to possession. At the same time it cannot be said that he has no interest, although an absolute title has not vested in him, but it stands much like many other cases where the interests are contingent, as in one class of remainders, reversions, gifts on condition which the donee may or may not accept, inchoate rights of dower and homestead and the like. In such cases there is an interest which the law will protect and which is the subject of grant, assignment and release; and no statute would be construed to affect such rights retrospectively; even where the right to pass retrospective laws existed, unless the legislative intention to do so was clearly expressed.

In respect to the wife's choses in action the husband must, at common law, join in a suit to recover them; he alone can release, assign or discharge them; and over them the wife, without the assent of the husband, has no such power.

Under such circumstances we think that the statute of July 4, 1860, providing that married women shall hold to their own use all property intrusted by, bequeathed, given or conveyed to them, cannot be construed to apply to conveyances made before the statute took effect, and under which the husband had previously acquired the rights which have been stated. In that statute there is nothing that indicates any purpose to apply its provisions to past transactions; but, on the contrary, everything is consistent with a purpose to apply it alone to gifts, conveyances, &c., to be made after the law took effect; and therefore upon well settled principles in this State it is to be construed as applicable only to transactions entered into after the law went into operation. *Rich* v. *Flanders*, 39 N. H. 304.

The rule of construction there recognized is not limited to cases where a vested interest might be affected, but is applied as well to cases touching merely the remedy. It is a rule of construction applied to statutes, and is, in substance, that the legislature will not be presumed to have intended that a statute shall have a retrospective action unless that intention is very clearly expressed; (p. 310;) and the ground upon which an interested witness in a cause pending when the statute was passed, was held to be competent, was, that the intention to apply the law to pending suits *was* clearly expressed. It was held, in short, that the legislature had no constitutional right to make a law affecting vested interests, but that it had power to affect the remedy merely in existing causes, where it does not destroy or impair vested rights; but, as a rule

of construction, the intention, to affect the remedy in existing causes, would not be presumed unless that intention was very clearly expressed.

.Indeed, this is a rule of construction almost universally recognized, even in jurisdictions where there is no constitutional impediment in the way of affecting vested rights. In this State the rule was fully recognized before the case of *Rich* v. *Flanders*, and applied in cases where only the remedy was to be affected, and where the terms of the statutes were broad enough to embrace existing causes. Among these cases are *Woart* v. *Winnick*, 3 N. H. 482 ; *Kennett's Petition*, 24 N. H. 139 ; *Colony* v. *Dublin*, 32 N. H. 434 ; *Dickinson* v. *Lovell*, 36 N. H. 364 ; and the same rule is distinctly recognized, since the case of *Rich* v. *Flanders*, in *Railroad* v. *Cilley*, 44 N. H. 579.

In the case before us a conveyance or transfer had been made before the law of July 4, 1860, went into operation, and its effect as to rights of the husband, could not be changed by that law unless the intention to affect existing conveyances is very clearly expressed; otherwise it would be construed to operate prospectively upon future conveyances alone..

This conclusion saves the necessity of considering the question whether the husband had, or had not, a vested interest in the wife's choses in action, before he reduced them to possession. If he had, of which there can be very little doubt, then, according to *Rich* v. *Flanders*, the legislature had no power by a subsequent law to affect that interest. It is enough, however, for the present case, that no intention to affect the husband's rights in choses in action acquired by the wife before the law took effect, is clearly made manifest.

Our conclusion,. therefore, is that the rights of the husband in this stock are to be determined by the laws in force at the time of the transfer ; and that, consequently, on the death of the wife, the husband became entitled absolutely to this stock, subject only to his wife's debts ; and that, on his death, this interest vested in his representatives.

It appears, however, that administration on the estate of the wife has been taken by the plaintiff, who seeks to recover the stock or its value from the possession of the husband's representative. If there were debts of the wife, for the payment of which this stock was needed, a recovery might in some form be had ; but it appears that no such debts exist ; and the question is, whether, under such circumstances, the stock can be drawn from the hands of the person who is entitled to hold it against all but the wife's debts. If the stock were in the hands of the plaintiff, there being no debts of the wife, he would hold· it in trust merely for the defendant ; and such being the case, we can perceive no ground on which the plaintiff is entitled to recover.

The stock is now in the possession of the party entitled to hold it in trust for the heirs of the husband. If recovered it must be upon some ground purely technical ; the plaintiff would at once be accountable for it to the party from whom it was drawn ; he would in fact be a trustee for the persons who are represented by this defendant, and who alone are beneficially interested in this stock. Under such circumstances, to allow the plaintiff to recover would be much the same as allowing an

administrator, who represents only the heirs, for the reason that there are no creditors, to recover from those heirs the several portions of the estate which by mutual agreement have been apportioned to them as a final settlement of the estate; and such an action, it has been held, cannot be maintained. *Hibbard* v. *Kent*, 5 N. H. 516. Upon this principle we think the action cannot be maintained. Besides this, as the representatives of the husband are entitled to both the legal and equitable interest in the stock, it may deserve consideration whether this may not operate, by way of rebutter to prevent circuity of action, as a bar to the action. See *Robinson* v. *Leavitt*, 7 N. H. 76.

However this may be, upon the other ground, we think the action cannot be maintained.