## HOUSTON *v.* CLARK.

The wife of C. separated from him, leaving in his possession certain personal property belonging to herself. She afterwards demanded some portion of the property, and he refused to give it up. Thereupon she sold the whole of it to the plaintiff, who, after a demand by himself and a refusal, brought trover to recover its value : *held,* that by the statutes of 1860 and 1865 relating to the rights of married women, and General Statutes, chap. 164, sec. 1, all the rights, both absolute and marital, which the husband formerly acquired by marriage in the chattels of the wife, were substantially abolished; that it now requires the same evidence to sustain a transfer of the chattels of a wife to her husband as would be necessary to sustain a transfer of the chattels of a husband to his wife :—*held,* also, that defendant's refusal to surrender the goods when demanded by his wife did not affect her general right of property in them, and that the buyer might maintain trover for them in his own name.

The doctrine of *Wendell* v. *Safford,* 12 N. N. 178, re-affirmed.

This is an action of trover, by Charles Houston against Westley H. Clark, for sundry articles of household furniture and wearing apparel, the conversion being alleged on June 10, 1869.

It appeared that the defendant married the plaintiff's daughter, November 5, 1868, and that she then owned the property in question, most of which was given to her by the plaintiff. That some time in that month it was carried to the defendant's house, and there used by herself and husband until May 30, 1869, when she returned to her father's house, and soon after sold the property to the plaintiff, who, in a short time after, demanded the property of the defendant at his house; and he declined to give it up, saying he was not prepared to do so ; and this suit was then brought, June 12, 1869. The defendant

offered to prove that before the sale to the plaintiff, the wife of the defendant demanded of him certain wearing apparel, part of the property sued for, and he refused to give them up; and he contended that he thereby reduced the property to his possession, and that, at least, this would be a conversion, and that only a right of action remained in the wife, and she could not transfer any right to the plaintiff.

But the court ruled that the evidence was not admissible for that purpose; that the husband had no such marital right in respect to this property; -and that the wife had the power to sell it to the plaintiff, so as to enable him to maintain a suit for all of it, including that which the wife had so demanded of him;—to which the defendant excepted, and moved for a new trial for error in the ruling and instructions, the jury having returned a verdict for the plaintiff assessing the damages at four hundred and fourteen dollars and seven cents; and the defendant moved that the verdict be set. aside because the damages were excessive. The evidence bearing upon this point was quite fully reported to the court, but it need not be stated here.

*Morris & Parsons and Hibbard,* for the plaintiff.

*Blaisdell and H. & G. A. Bingham,* for the defendant.

LADD, J. At common law, the money and chattels, real as well as personal, of the wife, in possession, became the property of the husband absolutely upon the marriage. Com. Dig., Tit. *Baron & Feme* (E. 2, 3). And the same was true of chattels personal, not in possession at the time of the marriage, if they were reduced into possession during the coverture. Co. Lit. 351, *b.*

In the case of *Hall* v. *Young,* 37 N. H. 134, decided in 1858, the court say : " A series of judicial decisions, sustained by the general course of legislation in this State, have materially modified the ancient rules of the common law upon this subject;" and it is there held, that the husband acquires by the marriage no right or title to the personal property owned by the wife at the time of the marriage, or accruing to her subsequently, whether it consists of specific chattels, money, or choses in action, except the marital right of reducing it to possession.

The same doctrine is laid down in *George* v. *Cutting,* 46 N. H. 130, where it is said, " in this State, the personal chattels of the wife remain hers until the husband reduces them into his possession with the intention of making them his own ; and in this respect there is, with us, no distinction between the personal chattels of the wife and her choses in action." The same is repeated in *Caswell* v. *Hill,* 47 N. H. 407.

In making this innovation upon the ancient rules of the common law, the court seem to have been governed more by reason and the " course of legislation" than by any express statute. Indeed, we are not aware of any statute prior to 1860, which in terms provides that the personal chattels owned by the wife, and in her possession at the time of the marriage, shall remain hers until reduced into possession by the husband.

In all the cases of the class above referred to, it was held to be a question of fact whether the husband had or had not reduced the wife's chattels to his possession, depending mainly upon the intention of the parties. *Coffin* v. *Morrill*, 22 N. H. 359; *Cutter* v. *Butler*, 25 N. H. 343; *Andover* v. *Merrimack County*, 37 N. H. 437; *George* v. *Cutting*, above cited, and cases there referred to. And it would seem that his intention must appear from some unequivocal act on the part of the husband, indicating his purpose to assert this marital right.

In *Caswell* v. *Hill*, SARGENT, J., says: "Was the household furniture, thus bought by the wife before marriage, reduced to possession by the husband in his lifetime? It will be seen at once, from the nature of the property in question here, that the use and enjoyment of this property in the family would necessarily be the same, if used at all, whether the wife claimed to hold it as her separate property, or whether the husband claimed it as his. The fact that the property was used, occupied, and enjoyed, as such property is ordinarily used and enjoyed, would not alone determine the question either way, because such use and enjoyment and occupancy would be likely to follow in either case. In the absence of any act on the part of the husband, aside from such ordinary use and occupancy, it must be mainly a question of intention. * * * Looking in this case for evidences of the intent, we find no declarations or acts on the part of the husband tending to show any intention to claim this property or to reduce it to his possession."

These remarks apply as well in this case as they did in *Caswell* v. *Hill*, so far as all the property here is concerned, except the wearing apparel demanded by the wife, which the husband refused to give up. There was no evidence of any act or declaration by the husband denoting an intention to reduce the other property to his possession; so that under the law of this State, as it was held prior to the statute of 1860, there seems to be no reason why the plaintiff should not recover for, at least, all the property except that demanded.

Probably, as the law stood before 1860, the refusal of the husband to give up a part of the property when demanded of him by the wife, might be competent evidence tending to show an intention on his part to assert his marital right to reduce so much of it into his possession.

But it is unnecessary to inquire what might then have been the effect of such refusal; for we think the decision of this case rests upon the plain, cogent, and unequivocal terms of the statute under which the rights and liabilities of the parties arose.

By the Gen. Stat., ch. 164, sec. 1, it is provided that " Every woman shall hold to her own use, free from the interference or control of any husband she may have, all property at any time earned, acquired, or inherited by, bequeathed, given, or conveyed to her, either before or after marriage, if such earning, acquisition, conveyance, gift, or bequest were not occasioned by payment or pledge of the property of the husband."

In view of the manifest tendency of the legislation on this subject, since 1846, to enlarge the rights of married women in respect to property owned by them before marriage, or acquired by them after mar-

riage from any source independent of the husband, we cannot doubt that it was the intention of the legislature, in adopting the present statute, to abolish, substantially, all rights, both absolute and marital, which the husband acquired by marriage in the chattels of the wife; and that, so far as relates to the control, management, and disposition of property that comes to her in either of the modes mentioned in the statute, a married woman is placed upon an entire equality with her husband or any other person; that is, the disability of coverture is so far wholly removed. *Jordan* v. *Cummings*, 43 N. H. 137; *Perkins* v. *George*, 45 N. H. 453.

This being so, is there anything in the case to show that the title to this property, or any legal interest in it, passed from Mrs. Clark to her husband between the time when it was carried to defendant's house in November, 1868, and the time she sold it to her father, the plaintiff, soon after May 30, 1869?

It is said that the wife brought this property to her husband's house, and there applied it to such purposes as implied a common use, and a mutual understanding and agreement that it should be held and used for their joint convenience and benefit; that it then became their common property; that by so doing she so far modified or surrendered her right to the sole use and control of it that she could not afterwards sell or dispose of it without the consent of her husband; that by her own act she had applied or dedicated it to the joint use of herself and husband; and that, having done so, she could not of her own motion deprive him of the right in it which she had given him. Suppose the husband provide articles for upholding the family and furnishing a home, which are dedicated and applied to that purpose in such a way as to imply a common use, and a mutual understanding and agreement, as much as in case of such property furnished by the wife, that they shall be used for their joint convenience and benefit, would it be contended that he thereby bestows upon the wife a vested interest in such property which she can assert against him at any time? that by so doing he clothes her with authority to forbid a sale by him, or to revoke and annul any contract he may make for the management and disposition of it?

If such a dedication and use of the husband's property would not pass the title or any legal interest in it to the wife, it follows that the same facts would not show a transfer of the wife's property to the husband. The marriage relation does not make husband and wife co-partners, or tenants in common of their individual property, but their rights in that particular are regulated in this State by statute; and we are satisfied that, under our statute, there must be the same evidence to sustain a transfer of the chattels of a married woman to her husband, as would be required to sustain a transfer of the chattels of a husband to his wife.

In this case there was no evidence of a gift or other conveyance by Mrs. Clark to her husband; and in the view we take, the evidence offered, of a refusal by him to give up the property when demanded by her, was of course inadmissible to show title in the defendant.

The defendant contends that this evidence was admissible, because in case he had not the right to hold the property against his wife by virtue of the marriage relation, it showed a conversion by him which created a right of action in her, and that such right of action could not be transferred to the plaintiff.

This position cannot be maintained. A refusal to deliver property to the owner on demand does not pass the title in that property to the wrong-doer. It is evidence of a conversion which will enable the owner to maintain trover for its value; but it is only the payment of the value which stands in the place of a purchase, and operates to transfer the property. *Hyde* v. *Noble*, 13 N. H. 502.

Mrs. Clark was as much the general owner after a refusal of the defendant to give up the property as before; and a sale by her would transfer all her rights in it, including the right of immediate possession.

We are therefore of opinion, that at the time of the sale by Mrs. Clark to the plaintiff she was the owner of all the property in question; that by the sale it passed to the plaintiff; and that he may well maintain this suit to recover its value.

The defendant moved that the verdict be set aside because the damages were excessive; that is, because the jury over-estimated the value of the property.

In *Wendell* v. *Safford*, 12 N. H. 178, speaking of a motion to set aside a verdict as against the evidence, the court, GILCHRIST, J., say: " But in the examination of this point, courts proceed with such a degree of caution as not to interfere with the proper duties of a jury. Where the verdict is decidedly against the weight of evidence, so that it is apparent that the jury must have misunderstood or totally disregarded the instructions of the court thereon, or must have neglected to consider the facts and overlooked prominent and essential points in the evidence; where it is such a verdict that twelve honest and intelligent men would not have returned it, it is the duty of the court to set it aside. But where presumptions are raised, and inferences drawn, and evidence is to be weighed, the verdict will not be set aside, although the court might have decided the other way upon the facts."

The practice in this State has ever since been in accordance with these principles. See *Palmer* v. *Portsmouth*, 43 N. H. 265.

Enough appears in this case to show that the evidence in relation to the value of the property was quite contradictory. All this evidence was submitted to the jury. They saw the witnesses, and could judge of their capacity and fairness. We have no such opportunity. At the trial the jury was furnished with all the light either party could throw upon the question of value which they were trying. Should we undertake to revise this action without having the witnesses before us, and with but a small portion, at best, of the light which they had upon the subject, it is clear we should be liable to fall into grave difficulties and error.

Applying the principles so clearly laid down in *Wendell* v. *Safford*, and repeated in all the cases since when such a motion has been made, we do not think the evidence reported here shows a case where the

court ought to interfere and set aside the verdict for the cause claimed. [The parties, however, agreed that the verdict should be reduced to $300, and judgment was accordingly rendered for that sum.]