Aug. 10,
1876. MOULTON v. HALEY.

*Resulting trust in favor of wife against husband.*

Where land was purchased with money of a married woman, and the deed taken running to her husband without her knowledge, it is a question of fact and intention whether the husband reduced the money to possession before paying it over for the land, so that the equitable as well as legal estate would be vested in him by the deed.

If he had not thus asserted his marital rights, and the money when paid over was the property of the wife, it seems that a trust would result by implication of law in her favor against the husband and his creditors.

FROM STRAFFORD CIRCUIT COURT.

BILL IN EQUITY. Tried before RAND, J., who reported the following facts for the opinion of this court:

The plaintiff is the wife of Stephen F. Moulton, and the defendant, when the suit was commenced, was a creditor of said Moulton by a judgment recovered in the supreme judicial court of Maine for the sum of $108.60 damages, and $11.63 costs.

The plaintiff was married to said Moulton on August 20, 1859, and had at the time of the marriage property and estate in her own right, in part the proceeds of her own earnings, and in part received by her by inheritance. In July, 1870, there was purchased with the proceeds of this property a parcel of land with the buildings thereon—described in the bill—situated in Rochester in this state. The deed for this property was taken by said Stephen F. Moulton, without the consent of the plaintiff, in his own name; and when she was informed of that fact, some three weeks after the deed was made, she expressed herself as dissatisfied, and continued so to express herself at different times afterwards. On January 13, 1874, the defendant caused a writ to be sued out against the said Stephen F. Moulton, upon the said judgment, and the said parcel of land to be attached thereon. This action was entered at the circuit court holden at Dover on the first Tuesday of September, 1874, and was continued to the next term of said court, held on the second Tuesday of February, 1875, at which time judgment was rendered against said Moulton for $243.88, and $19.05 costs; and on March 3, 1875, execution was issued upon said judgment, and a levy made upon said parcel of land, and the writ afterwards returned satisfied. The bill prays that the levy be cancelled, and declared null and void, and that the defendant be ordered to execute to the plaintiff such conveyance as will secure against him her title to the premises, and be enjoined from proceeding on his claim against said premises, and for general relief.

After the place in Rochester was bought, it was repaired to some

extent by the plaintiff and her husband together. The plaintiff spent no money in repairing, except what she spent for papering. She put on the paper herself, and did some painting. Mr. Moulton put on the blinds, costing some $25, and expended otherwise on the repairs, in labor and material, from $25 to $50. In 1874 Mr. Moulton commenced building a new house on the said lot of land. A cellar was dug costing about $102, and Mr. Moulton expended some $400 besides, of his own earnings, on the new house. He did much of the work himself, and got other workmen to help him by exchanging work. The plaintiff put about $100 in this new house. Moulton afterwards went into bankruptcy, and surrendered this new house to his creditors. The defendant had no knowledge of the situation of Mr. Moulton's property, and left the matter in the hands of his counsel, Mr. C. K. Sanborn. Mr. Sanborn investigated the situation of the property of Mr. Moulton to some extent, and found the Rochester real estate standing in his name. And in consequence of this he made the writ. He had no information that the property was not Mr. Moulton's, and did not know of Mrs. Moulton's claim till the February term of court, 1875, when he was informed in regard to it by the counsel for the plaintiff. He made no inquiries of Mr. or Mrs. Moulton. The writ was a trustee writ, and the trustees were discharged without costs at the February term of court, 1875. The Rochester property was attached on January 14, 1874, and real estate in Madison attached on August 11, 1874.

Upon the authority of the cases cited in *Horn* v. *Cole*, 51 N. H. 287, the circuit court held that the plaintiff is estopped to claim the property described in the bill, and ordered that a decree be made in favor of the defendant.

It appeared that the plaintiff and her husband had some understanding about the property described in the bill, before their marriage, and that this understanding or agreement was reduced to writing before the marriage, and signed soon after. The plaintiff offered parol evidence of the contents of this instrument, the same having been lost. The evidence was rejected on the ground that the instrument was postnuptial, and the plaintiff excepted. The plaintiff also excepted to the evidence offered in regard to the new building put upon the property by the husband, on the ground that the evidence was irrelevant.

*Frank Hobbs*, for the defendant.

The plaintiff knew that her husband took the deed of land in his own name, and she allowed it to remain in his name for nearly four years without any effort to have the title vested in herself. She allowed her husband to build on the land, and to invest his labor and means in the old house, and by this course she induced the defendant, through Mr. Sanborn, to change the defendant's position and begin suit, etc. *Horn* v. *Cole*, 51 N. H. 287, concludes the plaintiff. Four years' delay to assert her title is gross laches on the plaintiff's part, were it clear she was not intending to aid a fraud. In any event, the plaintiff's husband has put

into the estate in controversy one hundred dollars, to which this plaintiff has neither legal nor equitable claim, and which, with interest, belongs to her husband's creditors (for, as appears in the plaintiff's brief and in the bill, the plaintiff lived and lives in Madison, Carroll county, and has a homestead in Madison, and we ask to have the case amended to show these facts). The common doctrine applies, that between two parties, etc., that one must suffer by whose neglect the exigency hath arisen.

An ante-nuptial contract must have been in writing, as to lands, and signed. Whatever the contract was, the writing was the best evidence. Whatever contract was attempted to be executed, was attempted to be executed after the plaintiff's marriage, when the wife could not contract with her husband so as to bind third parties, at least.

*Wheeler* and *J. H. Hobbs*, for the plaintiff.

LADD, J. It seems to me the decision of this case cannot stand on the ground that the plaintiff is estopped by her conduct to claim a resulting trust in her favor in the land bought and paid for with her money. The deed was taken in the name of her husband without her knowledge, and against her consent. And even if she had consented, if she had made the purchase herself and directed the deed to be made running to her husband, I do not see how, then, any doctrine enunciated in *Horn* v. *Cole*, 51 N. H. 287, would apply. Unless there was something to rebut the presumption of a resulting trust, such trust would arise by implication of law; and I see nothing to distinguish the case from the ordinary case of a resulting trust, nor do I know of any rule of law which requires the *cestui que trust* in such cases to take immediate measures to have the legal estate as well as the equitable interest placed in him. At any rate, I venture to say it is a novel doctrine, that an omission to do so will work an estoppel against the *cestui que trust* to maintain his equitable rights in the land; and I think no such effect can legally be given to the omission of the plaintiff here.

No case has been found where it is intimated that a resulting trust may not arise in favor of the wife against the husband; and *Hall* v. *Young*, 37 N. H. 134, seems to be a direct authority that it may. In any view, the existence or non-existence of such trust involved a question of fact and intention. Perry on Trusts, sec. 143, *et seq.*, and a multitude of cases referred to in notes. Undoubtedly the purchase of the land and taking a deed in his own name by Stephen F. Moulton was evidence of an intention by him to reduce this property of his wife into his possession; but bearing in mind that the common law rule was so far modified by decisions of the court, that, independently of any statute, the personal chattels of the wife remain hers until the husband reduces them into his possession, with the intention of making them his own—*Hall* v. *Young, sup.*, and see cases referred to in *Houston* v. *Clark*, 50 N. H. 479, 481—that evidence was not conclusive, and ought not to be weighed without all the other evidence that may be produced bearing on the question. Receiving the money of the wife

for the purpose of paying it away on her account, and thus paying it over, does not constitute a reduction to possession. *Hall* v. *Young, supra.*

If when the money was paid for the land it had been reduced to possession, so that it was actually the money of the husband, then, of course, no trust resulted. Whether there was a trust in favor of the wife was the great question in the case; and inasmuch as that question was not tried, I think the case should be discharged, and stand for further hearing in the court below.

As to the post-nuptial agreement, it could not, in any view, amount to anything more than a declaration of the husband's intention with respect to the property at the time the paper was executed. His intention at the time the land was paid for was the point in question, and on that he could be a witness. What his intention in that regard may have been years before seems to be immaterial; and I think there was no error in excluding this document.

The facts in reference to the new building erected on the land by the husband were properly received. His conduct with respect to the land—whether he assumed to control and manage it as owner, or otherwise—would bear upon the question whether his intention was to reduce the money of the plaintiff to possession when he paid it over for the land.

CUSHING, C. J. Assuming that the wife's property, which she owned at the time of the marriage in 1859, might have been appropriated by the husband to his own use, still it is a question of fact not settled in this case whether he had done so.

If he had not made the property his own before his taking the title to himself, although that might be evidence tending to show such appropriation, it certainly is not conclusive evidence. If it were settled as matter of fact that he had not assumed to exercise his marital right over it, then a trust would result to the wife under the circumstances of the case. I do not see how the plaintiff can be equitably estopped by what was done without her consent and against her will. So far as my recollection of the cases extends, those acts which have been held to estop a party have been acts voluntarily done by him. In the present case the plaintiff, so far as the case shows, has not even been silent in the matter, but has expressed her dissent.

The case of *Hicks* v. *Skinner*, 71 N. C. 539, 17 Am. R. 16, is very much like this. There the husband purchased property for the wife, taking the title in his own name, without her consent; and the case finds that he did this because he was afraid it would injure his credit if he took it in the name of his wife. But the court held that the equity of the defendant against her husband and his creditors was indisputable, and in particular it was held that the wife was not estopped.

I agree, therefore, with my brother LADD, that the decree must be set aside, and the case sent back for a further investigation of facts.

I think it clear that the evidence of the post-nuptial contract was rightly rejected.

The evidence in regard to the new building appears to have been relevant on the question which was in issue, whether the husband had made the property his own by the exercise of his marital rights.

SMITH, J. I do not think this case comes within the doctrine laid down in *Horn* v. *Cole.* The plaintiff did not take a conveyance of this land in the name of her husband to defeat her creditors, nor did she represent that the land belonged to him. The money with which it was purchased was earned and inherited by her before marriage, and appears to have been kept in her possession until the time of the purchase. Her dissatisfaction, expressed when she learned the deed had been taken in her husband's name, and subsequently, shows very clearly that the deed was not so taken with any fraudulent intent on her part; nor did the defendant become a creditor of the plaintiff's husband upon the strength of his owning this land, for his debt was contracted prior to her marriage. He was not therefore prejudiced in any way by the fact that the deed was taken in the name of the husband.

Unless at the time of the purchase the husband reduced the money to possession, a trust resulted in her favor, which can be enforced upon proper proceedings. *Atherton* v. *McQuesten*, 46 N. H. 205, decides that the husband had a vested right in 1859 to reduce this property to possession, which the legislature could not take away by the act of 1860. It becomes material, then, to ascertain whether by taking this deed in his own name he intended to reduce the purchase-money furnished by his wife to possession. His taking the deed is evidence of such reduction, but not conclusive.

As this question was not tried, the case must be discharged, and a

*New trial granted.*