MARCH 13, 1875. }        CLOUGH *v.* RUSSELL AND TRUSTEE.

*Trustee process — Husband and wife.*

| 55 | 279 |
| 66 | 143 |
| 55 | 279 |
| 72 | 561 |

The transfer by husband to wife of a note payable to him or order, in payment of a loan previously made to him by the wife from funds which she held as her own individual property under the statute, is a valid transaction, so that the maker cannot afterwards be charged as the trustee of the husband on account of such note.

It seems that a loan of her own money by a wife to her husband, in this state, may create a valid debt, for the recovery of which a right of action must exist in favor of the wife against the husband.

This suit was brought June 28, 1872, and service was made on said trustee the same day.

Murray discloses that he gave said Russell, on the 27th day of June, 1872, two notes, each in the sum of one hundred dollars, payable to said Russell or order, one in thirty and the other in sixty days, and the same are still unpaid. It appears these notes were endorsed and delivered on the day of their date by said Russell to Betsy A. Russell, his wife, who now claims to be the lawful owner thereof.

The endorsement of the notes is as follows:

"Manchester, N. H., June 27, 1872.
"Pay to Betsey A. Russell the within note.
(Signed)        " I. H. Russell."

It appears that in 1870, Lahey & Russell, the defendants, entered into copartnership, and continued in business until June 27, 1872, when Russell sold his interest to said Murray for $2,200 ; that while in such partnership, Mrs. Russell, this claimant, lent the said firm of Lahey & Russell certain sums of money, and took their notes therefor, amounting to $1,329.40, and lent her husband, the said Russell, in addition, some three hundred dollars.   This money so loaned belonged to Mrs. Russell as her own private property, having been given her by her father in part, and part of it was of her own earnings since her marriage with said Russell, in sewing and keeping boarders,—she paying rent and the expenses of keeping boarders,—and none of the money so loaned came to her from her husband, or was ever in his possession otherwise than as above stated.

When Russell sold out his interest to said Murray, as before stated, he paid to her these notes of Lahey & Russell, and a portion of his own debt, paying her $1,300 in money, and endorsing and delivering to her the two notes in question.

The questions arising on the foregoing agreed case were transferred to this court for determination by RAND, J., at the September term, 1874.

*Heath* and *Clough,* for the plaintiff.

*Lord & Sulloway,* for the claimant.

LADD, J.   I am of opinion that this trustee must be discharged.   It appears that Mrs. Russell, having money of her own, which by the statute she was entitled to hold against the creditors of her husband, and all the world, loaned some three hundred dollars of it to her husband. It was not a gift, but, as the case distinctly shows, a loan, and that most undeniably implies a valid promise by the husband to repay it. Indeed, the plaintiff's counsel in their brief admit that the notes in question were conveyed to her in payment of a debt honestly due her, precisely as they would have been to any other person. This, of course, shows that, as the law now is in this state, husband and wife may contract together, the common law in this particular having been wholly changed by statute.

I should not be inclined, however, to decide the case on this admission of counsel, unless the admission appears to be in accordance with the law.   But I think it is.   If a married woman may lease her land to her husband, as was held in *Albin* v. *Lord,* 39 N. H. 196, why may she not loan him her money ?   And since the statute provides that every woman shall hold to her own use, free from the interference or control of any husband she may have, all property, &c. (Gen. Stats., ch. 16, sec. 1), and shall have the same rights and remedies in relation thereto as if she were unmarried (*id.* sec. 13), why may she not do either ?

It is difficult to conceive what terms the legislature could have used

to show more unmistakably their intention to obliterate entirely, in this respect, the idea of the common law, that husband and wife are a legal unit. As was said, in effect, in *Houston* v. *Clark*, 50 N. H. 482, the statute unquestionably removes all disabilities of the wife so far as regards her separate property, and gives her the same rights and remedies with respect thereto as though she were sole.

The logical result seems to be, that the status of marriage interposes no obstacle in the way of either party maintaining a suit at law against the other, in respect of those contracts which the wife is empowered to make; for a contract in form is no contract in any legal sense, unless the law, while recognizing it as valid, furnishes a remedy for its enforcement.

Such right of action was, indeed, unequivocally recognized in *Claremont Bank* v. *Clark*, 46 N. H. 134; for, if a judgment may be had against the wife as trustee of her husband, it must be for the reason that she has in her hands money, &c., of her husband, for which he himself would have been entitled to judgment had he, instead of his creditor, brought the suit; and the decision is clearly put upon that ground.

If, then, the defendant owed a debt to his wife, which he was legally bound to pay, there was no reason why he might not use these notes for that purpose as well as any other property or money which belonged to him, and the title thereto would pass to her unless sec. 14 is to have the construction claimed for it by the plaintiff's counsel. That section is,—"Nothing in this chapter contained shall be construed to empower any husband to convey any of his property to his wife, in any other manner or with any other effect than if the same had not been passed."

But I think this was intended to guard against voluntary conveyances for the purpose of defrauding creditors, and that it cannot be held to prohibit the transfer of title in property or money from husband to wife for the purpose of paying an honest debt.

The plaintiff's counsel deprecate this wide departure from the doctrines and practice of the common law. Fortunately, the policy or impolicy of the law is not a matter we are to consider. We are to declare our judgment of its meaning and application, and if a mistake is made in ascertaining the legislative intent, the legislature is always at hand to correct it.

CUSHING, C. J. It appears in this case that Mrs. Russell, being possessed of money, part of which had been given to her by her father, and part of which was the proceeds of her own earnings without any of the property of her husband entering into them, had loaned the same to him, and that he transferred the notes in question to her in payment.

By Gen. Stats., ch. 164, sec. 1, she was entitled to hold this money to her sole and separate use.

If, according to the doctrine of *Albin* v. *Lord*, 39 N. H. 196, she might lease her real estate, held to her separate use, to her husband, I can see no reason why she might not lend him her money.

It is said, however, that by sec. 14, same statute, the husband cannot convey any property to his wife, and that therefore, however just the debt might be, the husband could not pay it because he could not give his wife a title to any of his property—money or other property.

By 1 Pars. on Cont. 345, and authorities cited, it appears that a husband may at common law make to his wife a valid gift of a chattel, so that such a conveyance is not prohibited at common law, and therefore permitted by our statute. This conveyance, therefore, being in this respect.not different from a gift, excepting that being for a valid consideration it cannot be disturbed by creditors, is good, and the trustee must be discharged.

SMITH, J. *Albin* v. *Lord*, 39 N. H. 196, is authority to the point that the wife may lease real estate to her husband. If she may make a valid lease, it follows that any other contract which she may enter into with him, which is not in fraud of his creditors, must be a valid contract.* The power to contract implies, of course, the power to enforce compliance with its terms. *Claremont Bank* v. *Clark*, 46 N. H. 134. If, then, the wife can compel the husband to perform his contracts with her, there is no reason why he may not do voluntarily what she has the power to compel him to do. Russell, being indebted to his wife, had the right under our laws to prefer her over his other creditors if he chose, the same as he might have preferred any other one or more of his creditors by voluntary payment of their claims, if he had chosen to do that. It is, of course, understood (and the case so finds) that the debt to the wife was a *bona fide* debt.

*In re Richardson & Cooper*, in the district court of the United States for the district of New Hampshire, it was held by CLARK, J., that a wife, having a valid claim against a firm of which her husband was a member, might prove it against their estate in bankruptcy. *Burnham, assignee,* v. *Russell and wife* (the same defendants who are the principal defendant and claimant in this suit), was a bill in equity brought by the assignee of Lahey & Russell, bankrupts, in the district court of the United States for this district, to recover the sum of $2,000 in money which Russell had paid to his wife—the same money referred to in this case, and the same notes for which it is sought to charge

---

*The opinion delivered in *Albin* v. *Lord* was very elaborate. It was very much abridged for publication. Judge MINOT, who tried the cause before Judge FRENCH in the court of common pleas, March term, 1859, and argued it in the law term of the supreme court, strenuously contended that if the construction finally given should be engrafted upon the statute, the wife could not only sue her husband as if he were a stranger, but could in a large class of causes arrest him and throw him into jail. The court conceded that this would be the necessary and logical result of their decision, but said that this would not be a sufficient warrant for a construction which, as it seemed to them, would nullify the legislative will. It is well known that Mr. Justice BARTLETT, individually, always denied the soundness of the decision, but he never claimed that it did not cover cases like the present.

REPORTER.

Murray as trustee of the claimant's husband in this suit. The bill was dismissed by Judge CLARK upon the ground that the complainant had failed to show that Lahey & Russell were insolvent, or contemplated insolvency, or that Mrs. Russell knew or had reasonable cause to believe them insolvent, or that the payment to her was in fraud of the bankrupt act,—the learned judge thereby clearly recognizing the right of the husband to pay a valid debt due from him to his wife, if not done in fraud of the bankrupt act.

*The trustee must be discharged.*