## TABOR & a. *v.* BLAKE.

An agreement by A with B that he will not for himself open, or cause to be opened, a billiard or eating saloon in W, is not violated when A opens and manages such a saloon as the agent and servant of C.

BILL IN EQUITY, for an injunction to restrain the defendant from carrying on the grocery business, or billiard or eating saloon business, in Woodsville. Facts found by a referee. February 10, 1872, the defendant and one Allen executed to the plaintiffs their joint and several bond in the sum of $1,000, with condition that neither of the obligors should, for themselves or either of them, open or cause to be opened a grocery, billiard saloon, or eating saloon, for trade, in the village of Woodsville. November 25, 1878, the plaintiffs recovered judgment against the defendant for $225 damages and costs, for a breach of the condition of the bond, which judgment has been satisfied for the sum of $107.80. In March, 1880, the defendant's wife opened a billiard and eating saloon in Woodsville, and has kept the same open for business to the present time. The defendant has kept a barber's shop during the same period in the same building, in a room adjoining the billiard and eating saloon, and in addition to his barber business has taken charge of the saloon business of Mrs. Blake, and as her servant and clerk.

*E. D. Rand (S. B. Page* with him), for the plaintiffs. 1. The defendant made a valid contract with the plaintiffs not "to open, or cause to be opened, a grocery, a billiard saloon, or eating saloon, for trade, in the village of Woodsville." He says he did not break that contract, because he acted as his wife's agent. If the defendant can escape from the obligation of his contract by virtue of such a pretext, the plaintiffs must necessarily lose all the benefit which they expected to derive from the contract. It is immaterial to them whether the defendant does what he is now doing, or whether he acts without the intervention of his wife in the business. If she should disappear entirely, they would suffer no more than they now suffer by his acts. How, then, should the contract be construed?

It is the duty of courts to collect, from the object, drift, and spirit of the agreement, what the leading and paramount intentions of the parties were, and to carry their intentions into effect. Met. Cont. 273. The subject-matter of an agreement is to be considered in construing the terms of it, which are to be understood in the sense most agreeable to the nature of the agreement. *Jefferyes* v. *Legendra,* 1 Show. 321; *Lilly* v. *Ewer,* 1 Doug. 72; *Company* v. *Company,* 46 N. H. 255; *Webb* v. *Thompson,* 1 Bos. & Pul. 5; *Warren* v. *Merrifield,* 8 Met. 96; *Anderson* v. *Pitcher,* 2 Bos. & Pul. 164; *Fenton* v. *Pearson,* 15 East 419; *Penn* v.

*Glover*, 1 Cro. Eliz. 421; *Dobson* v. *Crew*, 1 Cro. Eliz. 705; *Saward* v. *Anstey*, 2 Bing. 519; *Bache* v. *Proctor*, 1 Doug. 382; *Dormer* v. *Knight*, 1 Taunt. 417; *Doe* v. *Spry*, 1 B. & Al1. 617; *Doe* v. *Keeling*, 1 Mau. & Sel. 95; *Doe* v. *Worsley*, 1 Camp. 20; *Doe* v. *Laming*, 4 Camp. 77; *Tombs* v. *Painter*, 13 East 1; *Quackenboss* v. *Lansing*, 6 Johns. 49; *Perkins* v. *Lyman*, 9 Mass. 522; *Brampton* v. *Beddoes*, 13 C. B. (N. S.) 538; *Whitney* v. *Slayton*, 40 Me. 224.

The plaintiffs bought out the saloon business of the defendant. They took the bond to secure themselves against the competition of the defendant. Interpreted one way, the bond will be effectual according to the intent of the parties. Interpreted another way, according to the claim of the defendant, it will be no better than waste paper.

The defendant says he did not cause his wife to enter into the prohibited business in Woodsville, but that she caused him to enter into it. The beneficial interest of the plaintiffs in their bond cannot be frittered away by such a quibble.

2. The contract which the defendant says he entered into with his wife was a nullity. The law does not authorize husband and wife to make any such contract. G. L., c. 183, s. 12, and cases there cited.

*Ray, Drew & Jordan* and *Bingham & Aldrich*, for the defendant. The finding of the referee is, in substance, that the defendant did not open, or cause to be opened, a grocery, billiard saloon, or eating saloon in the village of Woodsville, and that the plaintiffs are not entitled to any part of the relief prayed for. The special report raises the question, whether, under the condition of the bond, the defendant can act as the servant of another in the business named. If this should be ruled against the defendant, it could only operate to stop his acting as servant, but could not stop his wife's business. The wife is not a party to the bill. The referee finds it to be her business, and not the defendant's, and she can continue it, doing her own labor, only employing other assistance; but we say that the defendant commits no breach of the bond in acting as servant for another. This is the simple question in the case. It makes no difference that that other is his wife. She has the right to do business, and has the right to hire her husband, if done in good faith; and the husband has the same right to work for his wife that he has for another, without violating the bond. G. L., c. 183, ss. 1–12, and the authorities cited in the margin. *Albin* v. *Lord*, 39 N. H. 196. The husband may be the wife's agent in managing her property, acquired and held separate and distinct from his. *Hutchins* v. *Colby*, 43 N. H. 159, 160; *Hall* v. *Young*, 37 N. H. 134, 146.

The mere receiving and paying out money for the wife, in her business, does not constitute him an owner of that business. There was no evidence that the defendant converted a dollar of the wife's

money to his use. On the contrary, the facts found by the referee are all clearly the other way. The defendant kept a separate account of the business of his wife, and kept her money separate, and made a full settlement with her the last day of December, 1880; and the case finds that each has performed his part of the contract. Then the question is, whether it is a breach of the bond for the defendant to act as a servant, in the ways found in the special report, for one who has the lawful right to engage in the business.

The covenant of the defendant is, that he will not open, or cause to be opened, a grocery, etc. It is not that he will not work for another in that business, or do any act that is a part of the business of a grocery man, as servant. The language used clearly shows that it was not part of the covenant, not even in the minds of the parties, when it was made, to prohibit the defendant from acting as a servant. The contract was intended to prohibit him from acting as owner. The meaning of the covenant is, that the defendant shall not open, or cause to be opened on his own account, a grocery, etc. To cause a thing to be done is to devise the plan, set on foot the scheme, furnish the means, and constitute the moving, acting power with which it is done. A person cannot be said to have caused that to be done which another has projected in theory, and with his own means carried out in fact. Under the findings of the referee, the defendant in no sense of the term can be said to have caused the grocery or saloon to be opened. He was neither the moving nor material cause; he was simply a hired servant, doing as he was directed. Servants do not open, or cause to be opened, a business.

In *Rawlinson* v. *Clarke*, 14 M. & W. 187, the defendant sold his business as a surgeon and apothecary, and covenanted that he would not, directly or indirectly, by himself or in copartnership with any other person or persons, carry on or exercise his practice or profession of a surgeon or apothecary. The evidence of a breach was, that the defendant exercised the practice of a surgeon as a servant;—held, that it did not constitute a breach of the covenant; that the covenant meant that the defendant should not carry on the business alone, or in partnership, on his own account.

On the sale of his business, the vendor agreed that he would not exercise or carry on the trade, either in his own name or that of any other person or persons, in a particular town;—held, that his managing the business of another person in the same trade in the town, at a weekly salary, was not a breach of the agreement. *Allen* v. *Taylor*, 39 L. J. 627—affirmed 19 W. R. 556; 24 L. T. N. S. 249;—see, also, 13 Am. R. 175, note to *Callahan* v. *Donnolly;* 1 Chit. Cont. 109 (11th ed.); *Harkinson's Appeal*, 78 Penn St. 196—*S. C.*, 21 Am. R. 9; *Turner* v. *Evans*, 2 DeG., M. & G. 740; High Inj., *s.* 743.

The penal sum in the bond is $1000. The plaintiffs have recov-

ered in a suit at law damages for the breach. The defendant insists that the court in such a case should not issue an injunction as to further breaches. High Inj., *s.* 745.

*E. D. Rand*, for the plaintiffs, in reply. The important words in the bond to be interpreted are the words, "open or cause to be opened." Quite a number of cases analogous to the present have been cited in the two briefs already furnished. But none of the cases are precisely in point, of course, because the words in the defendant's bond are not identical with the words to be found in any other instrument. If the defendant had bound himself simply not to "open a grocery, billiard saloon, or eating saloon in Woodsville," the cases cited would have a clearer analogy to the present case. We contend that if the words "cause to be opened" were not in the bond in this case, there is a great weight of authority in favor of the position that the acts of the defendant would constitute a breach of the bond. The American cases seem to be all that way. *Perkins* v. *Lyman*, 9 Mass. 522; *Whitney* v. *Slayton*, 40 Maine 224; *Harkinson's Appeal*, 78 Penn. St. 196.

This last case is cited by the defendant. The facts are as follows: A woman sold a bakery, and covenanted that she would not "engage in the same business, directly or indirectly, in the same place for ten years." Within that time she established her son in the same business, and advanced him money as she had done to her other children in their business. It was found, as a fact, that the business was carried on in good faith by the son, and not by the mother, and no actual damage to the plaintiff was shown. The master decided that the agreement was violated. The court of C. P. confirmed that; and the supreme court say, "without deciding adversely to the conclusion of the master and court on this point, we think the case is not free from doubt." There is some difficulty in reconciling the English cases upon this point. The defendant cites three, which he seems to consider as being in his favor:— *Rawlinson* v. *Clarke*, 14 M. & W. 187; *Turner* v. *Evans*, 2 DeG. M. & G. 740; *Allen* v. *Taylor*, 39 L. J. 627. The point of *Rawlinson* v. *Clarke* is not correctly stated in the defendant's brief. The breach complained of there was caused by the plaintiff himself, and the case turned on that very point. This case does not help the defendant.

*Turner* v. *Evans* we think is a strong case in favor of the plaintiffs. The defendant covenanted that he would not set up or carry on at C., A., or M., the business of a wine and spirit merchant. The defendant gave up his place of business at C., and had no place of business within the proscribed district, but he solicited and obtained orders within it. Lord *Cranworth*, confirming the decision of Vice-Chancellor *Kindersley* held that the question whether there was a breach of the covenant was too doubtful to entitle the plaintiff to an injunction without bringing an action.

Lord Justice Knight *Bruce* gave a strong dissenting opinion. The action was tried at law, and a verdict rendered for the defendant. During the Easter assizes of 1833, a rule was obtained to show cause why a verdict should not be entered for the plaintiff with nominal damages. On cause being shown, the rule was made absolute, the court of queen's bench being unanimously of opinion that the acts in question amounted to a breach of the covenant. Judgment was signed for the plaintiff June 23. July 14, on the motion being renewed before the vice-chancellor, a decree was taken by consent, granting a perpetual injunction in the words of the covenant.

Upon the point of the case now being discussed, *Allen* v. *Taylor*, 19 W. R. 35, is to a certain extent in the defendant's favor. The words to be interpreted were the following,—" exercise and carry on a trade." Lord *Romilly* was clearly of opinion that they meant to carry it on on defendant's own account, so that he could have the profits or a portion of the profits. Lord *Hatherly*, C., said,— " I confess I think this case too doubtful to deal with on an inter- . locutory application. The point is exceedingly nice and exceed-ingly close upon the limit. Although one cannot help expressing some degree of feeling as to the evasion that has been practised, having regard to the spirit of the contract, it is a little too much to say, upon this interlocutory application, that this gentleman is not to carry on business *simpliciter*, either in his own name or that of another man, and shall not act as the manager of another." V. C. *James*, who originally decided the cause for the defendant, stated, in *Dales* v. *Weaber*, 18 W. R. 993, that " he should prob-ably have decided *Allen* v. *Taylor* differently if it had not been for the previous case of *Clark* v. *Watkins.*" That is a pretty clear expression of dissatisfaction with the authority of both cases.

*Clark* v. *Watkins*, 11 W. R. 319, is somewhat obscurely reported, and the language of the instrument to be interpreted is, according to Knight *Bruce*, L. J., " by no means free from obscurity." *Stuart*, V. C., granted the injunction. His order was discharged "with-out prejudice to any question in the cause." That part of the opinion in the case, upon which *James*, V. C., leaned so reluc-tantly, would seem to be *obiter dictum*.

*Dales* v. *Weaber*, 18 W. R. 993, is a strong case in favor of the plaintiffs. It is there held that " where one agrees that he will not, directly or indirectly, either alone or in partnership with or with the assistance of any other person, set up, or follow, or prac-tise a particular business, he is regarded as violating his covenant by conducting the business in the capacity of assistant or manager for another person." In this case an injunction was granted, and it is perhaps more in point than any case to be found in the books except the case of *Whitney* v. *Slayton*.

The defendant insists that the court should not issue an injunc-tion, because the plaintiffs have recovered, in a suit at law, dam-

ages for the breach. That would be a good reason if the plaintiffs had recovered and collected the whole amount of the damages liquidated in the bond. In the bill there is a prayer for general relief. The plaintiffs do not ask for both remedies, but they insist that the defendant should be made to do what he agreed to do, or pay what he agreed to pay. He can take his choice. The court can grant the injunction under such conditions as they think proper, in accordance with the practice of courts of equity.

SMITH, J. The defendant's agreement with the plaintiffs was, that neither he nor Allen would, for themselves or either of them, open or cause to be opened a grocery, billiard saloon, or eating saloon, for trade, in the village of Woodsville. The referee has found that the business conducted since May, 1880, has been the business of Mrs. Blake, and that whatever connection the defendant has had with it has been that of her servant or agent. The issue before the referee was, whether the defendant was in good faith the agent merely of his wife, conducting a business that belonged to her, or whether, under color of acting as her servant, he was in fact transacting the business on his own account and in fraud of his agreement with the plaintiffs. There was evidence from which the referee might have found the latter to be the fact. His finding depended largely upon the degree of credit to which the witnesses were entitled. He has found that the business belonged to the wife, and that the defendant acted merely as her agent. His finding upon this question is conclusive.

The husband may act as agent for his wife. *Albin* v. *Lord*, 39 N. H. 196 ; *Hall* v. *Young*, 37 N. H. 134, 146 ; *Hutchins* v. *Colby*, 43 N. H. 159, 160. She may lease her land to her husband. *Albin* v. *Lord*, *supra.* She may be charged as his trustee for a debt owing from herself to him. *Claremont Bank* v. *Clark*, 46 N. H. 134. She may maintain an action against him for money lent. *Clough* v. *Russell*, 57 N. H. 279; *Bank* v. *Clark*, *supra.* The only limitation upon her holding property to her own use is, that its acquisition be not occasioned by payment or pledge of the property of her husband (G. L., *c.* 183, *s.* 1) ; and the only limitation upon her power to contract is, that no contract or conveyance by her of property held by her in her own right as surety or guarantor for her husband, nor any undertaking by her for him or in his behalf, shall be binding on her. G. L., *c.* 183, *s.* 12.

It being lawful for the defendant to act as agent for his wife, the question upon this branch of the case is, whether the defendant, by conducting the business of an eating saloon as agent for his wife, has violated his agreement with the plaintiffs. Has he, by acting as the servant of another in the business in question, opened or caused to be opened a billiard or eating saloon for himself ? There is no suggestion or evidence outside of the contract that the contract is not what the parties actually agreed to, and there is no

prayer in the bill for a reformation of the contract. By opening a saloon was intended not merely the entering upon the saloon business, but the continuing of the business after it had commenced. The object of the parties was, to prevent any loss of custom to the plaintiffs from the competition of the defendant in the same business; and their contract set forth the special manner in which competition was not to be instituted by the defendant. Neither of the obligors (the defendant and Allen) was to engage in the business "for themselves or either of them." " Or for any other person " is a restriction that would naturally have been added if it had been intended. The contract in restraint of trade did not forbid the defendant to engage in the business as agent or servant of any other person than Allen. *Eastern Express Co.* v. *Meserve*, 60 N. H. 198.

Several minor exceptions were raised by the plaintiffs at the hearing. They relate principally to the admission or exclusion of testimony, and have all been carefully considered. The principles involved are so well settled that we do not think any of them require discussion or special mention.

*Bill dismissed.*

All concurred.