BELKNAP.

---

PEARSON *v.* PEARSON.

The common-law right of the husband to make a post-nuptial settlement
upon his wife has not been changed by statute, and such settlement is
valid when not fraudulent as to the creditors of the husband.

VOL. LX.    33

Under *c.* 2342, *ss.* 1, 3, Laws of 1860, property given by a husband to his wife, not in fraud of his creditors, was held by her to her own use, free from his interference and control.

ASSUMPSIT, on a note of the defendant payable to the plaintiff, and dated Dec. 20, 1876. The parties are husband and wife. The defence is made by subsequent attaching creditors.

The evidence tended to show that in April, 1853, the plaintiff loaned the defendant, then her husband, between $340 and $350, which he then promised to pay her, with interest annually. No note or any writing was given or made representing this transaction. About $200 of this sum was the result of the plaintiff's earnings before marriage, and the remainder was the result of her earnings after marriage, during about ten months prior to the loan. Aug. 27, 1861, at the plaintiff's request, the defendant was induced to purchase a farm in order to furnish a home for her father. For this he paid $500, and the deed was taken in the name of the plaintiff. The purchase-money was understood by the plaintiff and the defendant to be a payment to the plaintiff of the defendant's indebtedness to her. The farm was sold April 19, 1864, for $600, which the plaintiff then loaned to the defendant, and which he invested in part payment for another farm. No note was given as evidence of this transaction. In 1865 the defendant gave the plaintiff U. S. government bonds for $900, in payment for the amount then considered to be due to her on account of the previous loans and the accrued interest. These bonds were kept in a desk in which the husband and wife kept their several papers. When the coupons became due, the husband, with the wife's consent, collected and retained the proceeds. In 1871 the plaintiff let the defendant have the bonds, and then took his note for their supposed value, viz., $948. The note in suit was given in renewal of the note of 1871. At the date of the note in suit, and at all times prior thereto, the defendant was not in any condition of pecuniary embarrassment.

Among other things, the court instructed the jury that if the defendant put his own money or property into his wife's hands, or made her his creditor, in fraud or intended fraud of his creditors, she cannot avail herself of such a transaction, and cannot recover. Verdict for the plaintiff, and motion for a new trial.

*E. A. Hibbard* and *C. F. Stone,* for the subsequent attaching creditors. The question is not whether the bonds for which the original note was given were owned by the plaintiff. The question is, Were they owned by her to her sole and separate use under our statute? If she, by the common law, had a title to the bonds but did not hold them in her own right, she is not entitled to maintain this action. *Patterson* v. *Patterson,* 45 N. H. 164.

The authority of a married woman to contract with her husband

and to sue him upon his contract (if she has any such authority), is wholly given by statute, and the statute gives such authority (if at all) only when it pertains to property held to her sole and separate use. Act of 1846, *c.* 327, *s.* 4; Act of 1860, *c.* 2342, *s.* 3; Gen. St., *c.* 164, *s.* 13; G. L., *c.* 283, *s.* 12. If the property is held by a common-law title, the rule of the common law in relation to contracts and suits prevails. A note given by a husband to his wife for money not held to her sole and separate use is void.

*T. J. Whipple*, for the plaintiff.

STANLEY, J. Whether there was a valid debt due from the defendant to the plaintiff we need not inquire, for, in the absence of fraud, actual or intended, either as to present or future creditors, the defendant had a right, at common law, to make a gift to the plaintiff as a post-nuptial settlement. The statutes have not changed the common law in relation to such settlements. Gen. St., *c.* 164, *s.* 14; Sch. Dom. Rel. 276, *s.* 16; 2 Kent 440; 4 Kent 463. But, the creditors say, admitting it to be true that the defendant might make a valid gift to his wife, she could not hold the property which was the subject of the gift to her sole and separate use, and therefore cannot maintain an action upon the note in suit, which was given for the property or the avails of it: she cannot maintain it, either at common law or under the statute, and *Patterson* v. *Patterson*, 45 N. H. 164, is cited. But there being no fraud, the creditors can make no defence to this suit that the defendant cannot make; and the question therefore is, Has the defendant a valid defence to the note? Two defences are urged,—first, want of consideration; second, inability of the wife to contract and sue.

The bonds were given to the wife in payment of the amount then considered due her from the defendant, on account of previous loans and the accrued interest. If it is conceded that the plaintiff did not take the bonds in payment of a debt legally due her and which she could enforce the payment of, the husband is still estopped to deny her title. If it was a gift, it was not prejudicial to creditors, and the donor was under no legal incapacity to make it, and was not circumvented by fraud. In any view of the transaction there was an equitable consideration as between the parties, and as against all others who have no greater rights; and if the bonds were an absolute gift, it became perfected and irrevocable by delivery and acceptance, and the plaintiff acquired a perfect title.

But it is urged that the statute, in force when the bonds were delivered by the defendant to the plaintiff, empowering a married woman to hold to her own use, free from the interference and control of her husband, all property inherited by, bequeathed, given, or conveyed to her, contained a proviso that such conveyance, gift,

or bequest should not be occasioned by payment or pledge of the property of the husband (Laws 1860, *c.* 2342, *ss.* 1, 3), and that the bonds having been given to the plaintiff by her husband, she did not hold them to her sole and separate use.

One object, if not the sole object, of this proviso was, to prevent the husband from placing his property in the hands of the wife to prevent its seizure for his debts.    The intention was, by using general and comprehensive terms, to embrace all cases where the effect of the transaction, whatever machinery might be used for the purpose, would be to put the husband's property in the hands of the wife in fraud of his creditors.   This being the purpose of the proviso, it has no application here ; for the jury have found that there was no fraud in fact, and, as a consequence, the plaintiff acquired and held the bonds in the same manner and with the same rights, in respect of them, as if they had come to her from any other source.   *Patterson* v. *Patterson* is therefore not in point.

In *Vogt* v. *Ticknor*, 48 N. H. 242, 250, the evidence tended to show that the husband was in debt and in embarrassed circumstances when he made the conveyance to his wife.   If it was held in that case that under the act of 1860 property given by the husband to the wife, not in fraud of his creditors, is not held by her to her own use free from his interference and control, the decision on that point cannot, in our opinion, be sustained.

In this case, the bonds furnished a sufficient consideration for the original note, and consequently for the note in suit ; and it being settled here that the husband and wife may contract with each other in reference to her separate estate, and that either may maintain a suit at law against the other in respect of those contracts *( Clough* v. *Russell,* 55 N. H. · 279, and cases cited), there must be

*Judgment on the verdict.*

All concurred.